**UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| RYAN McMILLAN, individually and on behalf of all others similarly situated,<br><br>v.<br><br>SAEJ ENTERPRISES, L.L.C. d/b/a SAEJ ENTERPRISES | Case No. _____<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1. Ryan McMillan brings this lawsuit to recover unpaid overtime wages and other damages from Saej Enterprises, L.L.C. d/b/a Saej Enterprises ("Saej") under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA"), and North Dakota Century Code 34 and the North Dakota Minimum Wage and Work Conditions Order (N.D. Admin Code § 46-02-07-01, *et seq.*) (together, the "ND Wage Laws").

2. McMillan and the other workers like him were typically scheduled for 12-hour shifts, 7 days a week, for weeks at a time.

3. McMillan and these workers often worked even more than that, but never received an overtime premium for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA, Seaj paid these workers the same hourly rate for all hours worked and improperly classified them as independent contractors.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers under the FLSA.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Plaintiff's claims under the ND Wage Laws form part of the same case or controversy as his FLSA claims under Article III of the United States Constitution.

8. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

10. McMillan performed work for Saej in this District and Division.

### THE PARTIES

11. McMillan worked for Seaj from July 2017 to January 2018.

12. During that time, McMillan worked exclusively for Seaj.

13. McMillan was an operator for Seaj.

14. McMillan was paid by the hour.

15. Seaj classified McMillan as an independent contractor.

16. McMillan's written consent is attached as Exhibit A.

17. McMillan represents at least two classes of similarly situated co-workers.

18. McMillan represents a class of similarly situated workers under § 16(b) of the FLSA. *See* 29 U.S.C. § 216(b). This FLSA class is defined as:

> **Current and former operators employed by, or working on behalf of, Seaj Enterprises, L.L.C. as independent contractors in the United States in the past three years who were paid "straight time for overtime" or not paid at all for time worked in excess of 40 in a workweek.**

19. McMillan represents a class of similarly situated workers under the ND Wage Laws pursuant to Federal Rule of Civil Procedure 23. This North Dakota class is defined as:

> **Current and former operators employed by, or working on behalf of, Seaj Enterprises, L.L.C. as independent contractors in North Dakota in the past three years who were paid "straight time for overtime" or not paid at all for time worked in excess of 40 in a workweek.**

20. Collectively, the FLSA Class Members and the North Dakota Class Members are referred to as "Putative Class Members."

21. Saej Enterprises, L.L.C. is a Montana limited liability company that does business in this District and Division. It may be served by serving its registered agent for service of process: **Registered Agents Inc., 3003 32nd Ave. S. Ste. 240, Fargo, ND 58108**.

## COVERAGE UNDER THE FLSA

22. At all relevant times, Saej has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Saej has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, Saej has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

25. Saej treated McMillan and the Putative Class Members as employees and uniformly dictated the pay practices to which McMillan and the Putative Class Members were subjected.

26. Saej's misclassification of McMillan and the Putative Class Members as independent contractors does not alter their status as employees for purposes of this FLSA action.

### FACTS

27. Saej is an oilfield services company.

28. Saej employs pump/lease operators to perform its oilfield support work.

29. Many of these individuals worked for Saej performing the same or substantially similar job duties as McMillan and were misclassified by Saej as so-called independent contractors in connection with Saej's oilfield operations.

30. While exact job titles and job duties may slightly differ, McMillan and the Putative Class Members were subjected to the same or similar illegal pay practices for similar work.

31. Specifically, Saej classified McMillan and the Putative Class Members as independent contractors and paid them the same hourly rate for all time worked, even those in excess of 40 hours in a workweek.

32. For example, McMillan worked exclusively for Saej from July 2017 through January 2018.

33. Throughout his employment with Saej, McMillan was classified as an independent contractor.

34. Saej typically scheduled McMillan to work 12-hour shifts, for as many as 7 days per week.

35. McMillan frequently worked well in excess of 40 hours per week for Saej.

36. In fact, McMillan frequently worked more than 84 hours per week for Saej.

37. The work McMillan performed is an essential part of Saej's core business.

38. During McMillan's employment with Saej and while he was classified as an independent contractor, Saej exercised control over all aspects of his job.

39. McMillan was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

40. During the time that McMillan worked with Saej, he worked exclusively for Saej.

41. Saej controlled all the significant or meaningful aspects of the job duties performed by McMillan.

42. Saej ordered the hours and locations McMillan worked, tools used, and rate of pay received.

43. Even though McMillan often worked away from Saej's offices without the presence of a direct Saej supervisor, Saej still controlled all aspects of McMillan's job activities by enforcing mandatory compliance with Saej's and/or its client's policies and procedures.

44. No real investment was required of McMillan to perform his job.

45. Saej determined McMillan's opportunity for profit and loss.

46. McMillan did not provide the equipment he worked with on a daily basis. Saej made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which McMillan works.

47. McMillan did not incur operating expenses like rent, payroll, marketing, and insurance.

48. McMillan was economically dependent on Saej during his employment.

49. Saej set McMillan's rate of pay and his work schedule and prohibited him from working other jobs for other companies while working on jobs for Saej.

50. Saej directly determined McMillan's opportunity for profit and loss, as McMillan's earning opportunity was based on the amount of time Saej scheduled him to work.

51. Very little skill, training, or initiative was required of McMillan to perform his job duties.

52. Indeed, the daily and weekly activities of McMillan and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Saej and/or its clients.

53. Virtually every job function was pre-determined by Saej and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties.

54. McMillan and the Putative Class Members were prohibited from varying their job duties outside pre-determined parameters.

55. Moreover, the job functions of McMillan and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

56. McMillan and the Putative Class Members did not have any supervisory or management duties.

57. For the purposes of an unpaid overtime claim, the Putative Class Members performed substantially similar job duties to McMillan related to servicing oil and gas operations in the field.

58. McMillan performed routine manual and technical labor duties that were largely dictated by Saej and/or its clients.

59. McMillan was not employed by Saej on a project-by-project basis.

60. While McMillan was classified as an independent contractor, he was regularly on call for Saej and/or its clients and was expected to drop everything and work whenever needed.

61. All the Putative Class Members performed the same or similar job duties and were subjected to the same or similar policies and procedures by which Saej dictated the day-to-day activities performed by each person. The Putative Class Members also worked similar hours and were denied an overtime premium as a result of the same illegal pay practice.

62. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for days or weeks at a time.

63. Instead of paying them overtime, Saej paid McMillan and the Putative Class Members the same hourly rate for all hours worked.

64. Saej denied McMillan and the Putative Class Members an overtime premium for any hours worked in excess of 40 hours in a single workweek.

65. Saej's straight-time-for-overtime policy violates the FLSA because these workers were, for all purposes, employees performing non-exempt job duties.

66. Like McMillan, the Putative Class Members maintained and worked with oilfield machinery, performed manual labor, and worked long hours in the field.

67. Because McMillan and the Putative Class Members were misclassified as independent contractors by Saej, they should receive overtime with a proper overtime premium for all hours they worked in excess of 40 hours in each workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

68. McMillan incorporates all preceding paragraphs.

69. The illegal pay practices Saej imposed on McMillan were likewise imposed on the Putative Class Members.

70. Numerous other individuals who worked with McMillan were improperly classified as exempt, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA and ND Wage Laws.

71. The classes are so numerous that joiner of all members is impracticable.

72. Thus, Saej imposed a uniform practice or policy on McMillan and the Putative Class Members regardless of any individualized factors.

73. Based on his experiences and tenure with Saej, McMillan is aware that Saej's illegal practices were imposed on the Putative Class Members.

74. Putative Class Members were all improperly classified as exempt and not afforded the overtime compensation when they worked in excess of 40 hours per week.

75. Saej's failure to pay wages and overtime compensation at the rates required by the FLSA and ND Wage Laws result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

76. McMillan's experiences are therefore typical of the experiences of the Putative Class Members.

77. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

78. McMillan has no interest contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, McMillan has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

79. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

80. Absent this action, many Putative Class Members likely will not obtain redress for their injuries and Saej will reap the unjust benefits of violating the FLSA and ND Wage Laws.

81. Furthermore, even if some of the Putative Class Members could afford individual litigation against Saej, it would be unduly burdensome to the judicial system.

82. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

83. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether the Putative Class Members were improperly classified as independent contractors;

    (b) Whether the Putative Class Members were not paid overtime at one and one half their regular rate of pay for hours worked in excess of 40 in a workweek;

  (c) Whether Saej's decision to not pay overtime to the Putative Class Members was made in good faith and on reasonable grounds; and

  (d) Whether Saej's violation of the FLSA was willful.

84. McMillan's claims are typical of the Putative Class Members claims. McMillan and the Putative Class Members Class Members have sustained damages arising out of Saej's illegal and uniform employment policy.

85. McMillan knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

86. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—FLSA VIOLATIONS

87. McMillan incorporates all preceding paragraphs.

88. As set forth herein, Saej violated the FLSA by failing to pay McMillan and the Putative Class Members overtime at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

89. Seaj knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay McMillan and the Putative Class Members proper overtime compensation.

90. Saej's failure to pay overtime compensation to McMillan and the Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

91. Accordingly, McMillan and the Putative Class Members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION—ND WAGE LAWS VIOLATIONS

92. McMillan incorporates all preceding paragraphs.

93. The conduct alleged in this Complaint violates the ND Wage Laws.

94. Seaj was and is an "employer" within the meaning of the ND Wage Laws.

95. At all relevant times, Seaj employed each member of the North Dakota Class as an "employee" within the meaning of the ND Wage Laws.

96. The ND Wage Laws requires employers to pay overtime to all non-exempt employees.

97. The members of the North Dakota Class were and are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

98. Within the applicable limitations period, Seaj had a policy and practice of failing to pay overtime pay to the North Dakota Class members for their hours worked in excess of 40 hours per week.

99. Within the applicable limitations period, Seaj had a policy and practice of requiring North Dakota Class members to work seven or more consecutive days in a row.

100. As a result of Seaj's failure to pay overtime to the North Dakota Class, Seaj violated the ND Wage Laws.

101. As a result of Seaj's requirement that the North Dakota Class Members work seven or more consecutive days in a row, Seaj violated the ND Wage Laws.

102.   The North Dakota Class is entitled to recover their unpaid overtime based on Seaj's failure to pay 1.5 times their regular rates of pay for work performed in excess of 40 hours in a week, an amount equal to these underpayments as liquidated damages, and such other legal and equitable relief resulting from their violations of the ND Wage Laws as the Court deems just and proper.

103.   The North Dakota Class also seeks recovery of attorneys' fees and costs of this action to be paid by Seaj, as provided by the ND Wage Laws.

## **RELIEF SOUGHT**

104.   Wherefore, McMillan prays for judgment against Seaj as follows:

(e)   For an order certifying this case as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the FLSA claims;

(f)   For an order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 for the purposes of the ND Wage Laws claims;

(g)   For an order finding Seaj liable for violations of state and federal wage laws with respect to McMillan and all Putative Class Members covered by this case;

(h)   For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to McMillan and all Putative Class Members covered by this case;

(i)   For a judgment awarding McMillan and all Putative Class Members covered by this case their attorneys' fees, costs, and expenses of this action;

(j)   For a judgment awarding McMillan and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(k)   For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
**Matthew S. Parmet**
Texas Bar # 24069719
**PARMET PC**
PO Box 540907
800 Sawyer St. (77007)
Houston, Texas 77254
phone713 999 5228
fax713 999 1187
matt@parmet.law

**Edmond S. Moreland, Jr.**
Texas Bar # 24002644
*admission pending*
**MORELAND VERRETT, P.C.**
700 West Summit Dr.
Wimberley, TX 78676
phone512 782 0567
fax512 782 0605
edmond@morelandlaw.com

**Attorneys for Plaintiff**

- 13 -